UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JOSEPH P. SWEET,

                Plaintiff,

          v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                Defendant.

_____

**REPORT AND
RECOMMENDATION**

11-CV-555
(GTS/VEB)

## I. INTRODUCTION

In February of 2008, Plaintiff Joseph P. Sweet applied for Supplemental Security Income ("SSI") benefits and disability insurance benefits ("DIB") under the Social Security Act. Plaintiff alleges that he has been unable to work since October of 2006. The Commissioner of Social Security denied Plaintiff's applications.

Plaintiff, by and through his attorneys, Conboy McKay Bachman & Kendall, LLP, Peter L. Walton, Esq., of counsel, commenced this action seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. §§ 405 (g) and 1383 (c)(3).

The Honorable Gary L. Sharpe, Chief United States District Judge, referred this case to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket No. 16).

## II. BACKGROUND

The relevant procedural history may be summarized as follows:

On February 29, 2008, Plaintiff applied for DIB and SSI benefits under the Social Security Act, alleging that he had been unable to work since October 1, 2006. (T at 111, 113).[1] The applications were initially denied and Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ"). A hearing was held in Watertown, New York, on November 20, 2009, before ALJ John P. Ramos.[2] (T at 23). Plaintiff appeared with Attorney Walton and testified. (T at 26-54). Amber Ecker, Plaintiff's neighbor and girlfriend, also appeared and testified. (T at 55-61).

On December 22, 2009, ALJ Ramos issued a written decision finding that Plaintiff was not disabled within the meaning of the Social Security Act and denying his claims for benefits. (T at 13-22). The ALJ's decision became the Commissioner's final decision on March 22, 2011, when the Social Security Administration Appeals Council denied Plaintiff's request for review. (T at 1-4).

Plaintiff, by and through Attorney Walton, commenced this action by filing a Complaint on May 17, 2011. (Docket No. 1). The Commissioner interposed an Answer on August 30, 2011. (Docket No. 8). Plaintiff filed a supporting Brief on October 5, 2011. (Docket No. 12). The Commissioner filed a Brief in opposition on November 15, 2011. (Docket No. 14).

Pursuant to General Order No. 18, issued by the Chief District Judge of the Northern

---

[1]Citations to "T" refer to the Administrative Transcript. (Docket No. 10).

[2]The ALJ presided from Syracuse, New York via videoconference. (T at 13).

District of New York on September 12, 2003, this Court will proceed as if both parties had accompanied their briefs with a motion for judgment on the pleadings.[3]

For the reasons set forth below, it is recommended that Plaintiff's motion be granted, the Commissioner's motion be denied, and this case be remanded for further proceedings.

## II. DISCUSSION

### A.    Legal Standard

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir.1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir.1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); see Grey v. Heckler, 721 F.2d 41, 46 (2d Cir.1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir.1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Where evidence is deemed susceptible to more than

---

[3]General Order No. 18 provides, in pertinent part, that "[t]he Magistrate Judge will treat the proceeding as if both parties had accompanied their briefs with a motion for judgment on the pleadings."

one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir.1982).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F.Supp. 147, 153 (S.D.N.Y.1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir.1984).

The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 416.920, 404.1520. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.[4]

---

[4]This five-step process is detailed as follows:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.

If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.

If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.

If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform

While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n. 5; Ferraris v. Heckler, 728 F.2d 582 (2d Cir.1984).

The final step of the inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 416.920(g); 404.1520(g); Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

## B.    Analysis

### 1.    Commissioner's Decision

The ALJ determined that Plaintiff had not engaged in substantial gainful activity since October 1, 2006, the alleged onset date, and met the insured status requirements of the Social Security Act through March 31, 2012.[5] (T at 15). The ALJ found that Plaintiff had the following impairment considered "severe" under the applicable Social Security Regulations (the "Regulations"): history of pseudoseziures. (T at 15-18).

_____

substantial gainful activity.

Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.

Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir.1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir.1999); 20 C.F.R. §§ 416.920, 404.1520.

[5]The ALJ noted that Plaintiff had engaged in gainful activity (i.e. working as a cook at various restaurants) since the alleged onset date; but found that the work did not generate sufficient income to be considered "substantial." (T at 15).

The ALJ determined that Plaintiff's medically determinable impairment did not meet or equal one of the impairments listed in Appendix I of the Regulations (the "Listings"). (T at 18).

After reviewing the medical evidence, the ALJ concluded that Plaintiff retained the residual functional capacity to perform a full range of work at all exertional levels, but should avoid hazardous machinery, driving, and the use of ladders, ropes, and scaffolds. (T at 18-21). The ALJ determined that Plaintiff could perform his past relevant work as a consumer relations call center representative. (T at 21). As such, the ALJ found that Plaintiff had not been under a disability, as defined under the Social Security Act, from October 1, 2006 (the alleged onset date) through December 22, 2009 (the date of the ALJ's decision), and was therefore not entitled to an award of benefits. (T at 22).

As noted above, the ALJ's decision became the Commissioner's final decision on March 22, 2011, when the Social Security Administration Appeals Council denied Plaintiff's request for review. (T at 1-4).

### 2. Plaintiff's Claims

Plaintiff argues that the Commissioner's decision should be reversed. He offers five (5) principal arguments in support of his position. First, Plaintiff argues that the ALJ improperly "surprised" him with evidence at the administrative hearing. Second, Plaintiff contends that the ALJ did not adequately assess the medical evidence. Third, Plaintiff asserts that the ALJ failed to properly apply the "special technique" for evaluating psychological impairments. Fourth, Plaintiff challenges the ALJ's credibility determination. Fifth, Plaintiff argues that the ALJ erred in finding that he could perform his past relevant work. This Court will address each argument in turn.

### a.    Improper "Surprise"

Disability benefits proceedings are "essentially non-adversarial . . . ." <u>Pratts v. Chater</u>, 94 F.3d 34, 37 (2d Cir.1996) (quoting <u>Echevarria v. Secretary of Health and Human Services</u>, 685 F.2d 751, 755 (2d Cir.1982)).  In addition, a disability claimant is  "entitled to 'a reasonable opportunity for a fair hearing' ...." <u>Gullo v. Califano</u>, 609 F.2d 649, 650 (2d Cir.1979), and must receive the basic protections of due process.  See <u>Henry v. Astrue</u>, No. 07 Civ. 0957, 2008 WL 5330523,  at *12-*13 (S.D.N.Y. Dec. 18, 2008)(citing <u>Townley v. Heckler</u>, 748 F.2d 109, 114 (2d Cir. 1984)).

Plaintiff argues that the ALJ made the process adversarial and deprived him of due process.  At the administrative hearing, following Plaintiff's counsel's direct examination, the ALJ posed several questions to Plaintiff and introduced several pages from Plaintiff's website. (T at  53).  The website, which the ALJ apparently located on his own initiative, described a "ghost hunting" trip Plaintiff took in May of 2009 and indicated that Plaintiff wrote books and planned to attend several book signings. (T at 53, 184-86).  The ALJ also referenced an on-line "profile" posted by Plaintiff on another website (again, also apparently located by the ALJ independently), in which Plaintiff indicated that he enjoyed "white water rafting" and stated that he designed web pages, played guitar and keyboard, created digital art, and wrote short stories and poetry. (T at 54, 183).

Plaintiff contends that (1) the ALJ should have provided advance notice of his intention to introduce the website evidence and (2) the ALJ should have afforded greater weight to the explanations and qualifications that Plaintiff provided with regard to that evidence.  This Court finds Plaintiff's arguments unavailing.  Plaintiff has not cited any authority to suggest that the ALJ was prohibited from seeking information available to the

general public–information arguably germane to the disability determination. Plaintiff's argument that the presentation of this evidence by the ALJ without notice at first blush has the appearance of merit. After all, one of the central precepts of due process is to allow a party a fair opportunity to defend his or her actions. Nevertheless, Plaintiff's suggestion that the ALJ had an obligation to provide advance notice of the website evidence is likewise not accompanied by any supporting citations to legal authority. The situation would be different if the ALJ had, without advance notice, confronted Plaintiff with completely new information from a third party source, *e.g.,* an adverse medical or vocational report not previously disclosed. Under such circumstances, due process would have demanded that Plaintiff be given an opportunity "to cross examine the author of an adverse report and to present rebuttal evidence." Townley, 748 F.2d at 114. Here, however, Plaintiff himself was the author of the evidence in question and, thus, has no cause to complain of being "surprised by" and/or questioned about his own words.

Moreover, even if the ALJ's failure to provide advance notice of the website evidence constituted improper "surprise," Plaintiff has not identified any unfair prejudice arising from such surprise. The website evidence was introduced and the ALJ's questions were posed without objection from Plaintiff's attorney. (T at 53-55). Plaintiff was afforded an opportunity to explain the information contained on the websites and, in fact, offered explanations both at the hearing (T at 53-55) and in a letter submitted shortly thereafter. (T at 197-99). Plaintiff does not explain how advance notice of the website evidence would have materially affected the outcome of the proceedings.

Plaintiff also argues that the ALJ should have afforded greater weight to his explanations for the website evidence. Specifically, Plaintiff suggests that the ALJ should

have credited his explanation that the representations regarding his activities on the websites were exaggerated, outdated, or both. (T at 53-54 197). In particular, Plaintiff testified that "I tend to make things sound a little better on the website, like, you know, I'll hype things up a little bit more." (T at 53). The ALJ clearly did not completely accept this explanation and referenced Plaintiff's ability to perform several of the activities referenced on the website (e.g. attend a "ghost hunting" trip, playing guitar) on several occasions in support of his decision. (T at 17, 19, 21).[6]

This Court finds that the ALJ acted within his discretion when deciding whether to credit Plaintiff's attempts to "clarify" his website statements. "It is the function of the [Commissioner], not [reviewing courts], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." Carroll v. Secretary of Health and Human Servs., 705 F.2d 638, 642 (2d Cir.1983) (citations omitted). Further, the ALJ has the benefit of directly observing a claimant's demeanor and other indicia of credibility, which thus entitles the ALJ's credibility assessment to deference. See Tejada v. Apfel, 167 F.3d 770, 776 (2d Cir.1999) (citing Pascariello v. Heckler, 621 F. Supp. 1032, 1036 (S.D.N.Y.1985)); see also Snell v. Apfel, 177 F.3d 128, 135 (2d Cir.1999). Although this Court finds error on other aspects of the ALJ's decision, as outlined below, there was no reversible error as to this aspect of the decision.

---

[6]Plaintiff testified that the reference to white water rafting was outdated and that he had not engaged in that activity for several years. (T at 54). The ALJ did not cite the rafting in support of his decision and, thus, appears to have accepted at least this aspect of Plaintiff's testimony.

### b.    Consideration of Medical Evidence

Dr. William H. Kimball, Plaintiff's treating psychologist, diagnosed "pseudoseizures" and indicated that Plaintiff's "detachment from feelings most likely contributes" to that condition. (T at 352).   In June of 2008, Dr. Kimball assigned a Global Assessment Functioning ("GAF") score of 45. (T at 352). The GAF "ranks psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness. " Pollard v. Halter, 377 F.3d 183, 186 (2d Cir. 2004).   "A GAF range of 41-50 indicates that the individual has a 'serious impairment in one of the following: social, occupational, or school functioning.'" Pollard, 377 F.3d at 186 n.1 (2d Cir. 2004).

A month later in July, 2008, Dr. Kimball diagnosed "undifferentiated somatoform disorder," along with pseudoseizure disorder, and noted a history of extensive trauma in childhood and adolescence. (T at 356).   He assigned Plaintiff a GAF score of 40. (T at 356).   "A GAF score of 31-40 indicates 'some impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) or major impairment in several areas such as work or school, family relations, judgment, thinking or mood.'" Radlinsky v. Astrue, No. 10-CV-01416, 2012 WL 4052109, at *3 n.2 (N.D.N.Y. Sep't 13, 2012).

In a treatment note, Dr. Kimball opined that the pseduoseizures were "stress related." (T at 358).   In April of 2009, Dr. Kimball completed a Medical Source Statement of Ability to Do Work-Related Activities (Mental) form.   He opined that Plaintiff had no limitation with regard to understanding and remembering simple or complex instructions; but moderate difficulties with carrying out simple instructions and making judgments on simple and complex work-related decisions. (T at 374).

Dr. Kimball also noted marked restrictions with regard to carrying out complex instructions. (T at 374). He assessed moderate limitations as to interacting appropriately with the public and supervisors; and mild difficulties in terms of interacting appropriately with co-workers. He found moderate limitations as to Plaintiff's ability to respond appropriately to usual work situations and to changes in a routine work setting. (T at 375). Dr. Kimball indicated that Plaintiff's pseudoseizures were of "great concern" and opined that the condition would have an "extreme" impact on Plaintiff's consistency and "reliability of work performance." (T at 375).

Under the "treating physician's rule," the ALJ must give controlling weight to the treating physician's opinion when the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2); Halloran v. Barnhart, 362 F.3d 28, 31-32 (2d Cir. 2004); Shaw v. Chater, 221 F.3d 126, 134 (2d Cir.2000).[7]

Even if a treating physician's opinion is deemed not to be deserving of controlling weight, an ALJ may nonetheless give it "extra weight" under certain circumstances. In this regard, the ALJ should consider the following factors when determining the proper weight to afford the treating physician's opinion if it is not entitled to controlling weight: (1) length of the treatment relationship and the frequency of examination, (2) nature and extent of the treatment relationship, (3) supportability of opinion, (4) consistency, (5) specialization of the treating physician, and (6) other factors that are brought to the attention of the court. C.F.R.

---

[7]"The 'treating physician's rule' is a series of regulations set forth by the Commissioner in 20 C.F.R. § 404.1527 detailing the weight to be accorded a treating physician's opinion." de Roman v. Barnhart, No.03-Civ.0075, 2003 WL 21511160, at *9 (S.D.N.Y. July 2, 2003).

§ 404.1527(d)(1)-(6); see also de Roman, 2003 WL 21511160, at *9; Shaw, 221 F.3d at 134; Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir.1998); Schaal v. Apfel, 134 F.3d 496, 503 (2d Cir. 1998).

The ALJ assigned "very little weight" to Dr. Kimball's assessments, finding them "inconsistent with the longitudinal medical evidence in the record." (T at 17). Further, the ALJ concluded that Dr. Kimball's treatment records were not consistent with his assessment of Plaintiff's ability to do mental work-related activities. (T at 20). This Court finds that the ALJ's decision erroneous and cannot be sustained.

First, the ALJ improperly faulted Plaintiff for being non-compliant with treatment. (T at 16)(noting report that Plaintiff "had not been showing up for therapy")(T at 19)("Even though the claimant testified . . . that he had limitations from these alleged impairments since childhood, the medical evidence . . . shows that the claimant's treatment for mental . . . problems has been minimal."). Faulting a person with a diagnosed mental illness for failing to pursue mental health treatment is a "questionable practice." See Day v. Astrue, No. 07 CV 157, 2008 WL 63285, at *5 n.6 (E.D.N.Y. Jan. 3, 2008)(noting that it "is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation")(quoting Nguyen v. Chater, 100 F.3d 1462, 1465 (9th Cir.1996) and citing Blankenship v. Bowen, 874 F.2d 1116, 1124 (6th Cir.1989)).

Second, the ALJ assigned too much relative weight to the opinions provided by the consultative examiner and non-examining State Agency review consultant. Dr. Shapiro, the consultative examiner, examined Plaintiff in May of 2008, before Plaintiff began treating with Dr. Kimball. Although Dr. Shapiro diagnosed "vaso-vagal events or non-epileptic seizures or pseduo-seizures," she found "no significant psychiatric problems," determined

that Plaintiff's symptoms did "not warrant a formal diagnosis," and concluded that Plaintiff could perform all of the basic mental activities of work. (T at 319).

The ALJ gave Dr. Shaprio's assessment "significant weight" (T at 17) and relied on that assessment when discounting Dr. Kimball's opinion. This was error. Dr. Shapiro qualified her opinion by noting that there was "no way to determine" whether Plaintiff's reported symptoms had "a possible psychological component without a full review of his related medical records," which were not made available to her. (T at 319). Dr. Kimball, in fact, identified a psychological component to Plaintiff's pseudoseizures *after* Dr. Shapiro rendered her opinion. (T at 356, 358). The ALJ appears not to have considered that Dr. Shapiro might have modified her opinion if she had been given the opportunity to review Dr. Kimball's assessment. Moreover, in any event, an opinion based upon a single examination generally deserves limited weight. See Crespo v. Apfel, No. 97 CIV 4777, 1999 WL 144483, at *7 (S.D.N.Y. Mar. 17,1999) ("In making a substantial evidence evaluation, a consulting physician's opinions or report should be given limited weight" because "they are often brief, are generally performed without benefit or review of the claimant's medical history and, at best, only give a glimpse of the claimant on a single day.").

The non-examining State Agency review consultant (A. Hochberg) made findings consistent with Dr. Shapiro's assessment (T at 331), but the consultant also rendered his opinion before Plaintiff began treating with Dr. Kimball and never personally examined Plaintiff. (T at 333). His report was therefore based on an incomplete record and is accordingly entitled to little weight. See Griffith v. Astrue, 08-CV-6004, 2009 WL 909630 at *9 (W.D.N.Y. July 27, 2009) ("The State Agency Officials' reports, which are conclusory,

stale, and based on an incomplete medical record, are not substantial evidence"); see also McClean v. Astrue, 04-CV-1425, 2009 WL 1918397, at *4 n. 2 (E.D.N.Y. June 30, 2009).

Third, even if the ALJ believed Dr. Kimball's findings were inadequately supported by his treatment notes and/or contradicted by the other evidence in the record (e.g. the website evidence and the reports of the consultative examiner and State Agency review consultant), the ALJ was obliged to re-contact Dr. Kimball before discounting his opinion. The assessment of the treating psychologist was the central piece of evidence in this case and the ALJ was obliged to ensure full development of the record before assigning that assessment "little weight."

In other words, the ALJ discounted Dr. Kimball's findings primarily because of the opinions provided the consultative examiner and State Agency review consultant, both of whom reached conclusions dramatically different from the treating psychologist (i.e. no significant psychiatric problems vs. a condition of "great concern" and GAF of 40). However, before siding with the former as opposed to the latter, the ALJ was obliged to re-contact the treating psychologist to explain the discrepancy. Likewise, the ALJ clearly felt that the website evidence suggested a greater capacity to perform work-related activities than assessed by Dr. Kimball, suggesting that this evidence unduly influenced the ALJ's judgment concerning the competing views of the consultants versus the treating physician and his overall view of the Plaintiff's claim. Again, he should have afforded Dr. Kimball an opportunity to address the website evidence before discounting the psychologist's opinion.

It is well-settled that the ALJ has an "affirmative duty to develop the record and seek additional information from the treating physician, *sua sponte*, even if plaintiff is represented

by counsel" to determine upon what information the treating source was basing his opinions. Colegrove v. Comm'r of Soc. Sec., 399 F.Supp.2d 185, 196 (W.D.N.Y.2005); see also 20 C.F.R. §§ 404.1212(e)(1), 416.912(e) (1) ("We will seek additional evidence or clarification from your medical source when the report from your medical source ... does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques."). Failure to re-contact is reversible error. See Taylor v. Astrue, No. CV-07-3469, 2008 WL 2437770, at *3 (E.D.N.Y. June 17, 2008) (finding it error for the ALJ to not re-contact Plaintiff's treating physician when he determined that the physician's opinion was "not well-supported by objective medical evidence").

Moreover, the ALJ does not appear to have considered the fact that the consultative examiner and State Agency review consultant rendered their opinions *before* Dr. Kimball identified the psychological component of Plaintiff's psuedoseizures. This was a material omission and there is a significant likelihood that Dr. Kimball's finding would have impacted the conclusions drawn by the consultative examiner and State Agency review consultant.

Accordingly, this Court finds that remand is necessary for reconsideration of Dr. Kimball's opinion and further development of the evidentiary record in light of the concerns outlined above.

### c. Special Technique

When evaluating the severity of mental impairments, the regulations require the ALJ to apply a "special technique" at the second and third steps of the review, in addition to the customary sequential analysis. Kohler v. Astrue, 546 F.3d 260, 265-66 (2d Cir.2008) (citing 20 C.F.R. § 404.1520a).

The technique first requires a determination of whether the Plaintiff has a medically

15

determinable mental impairment. 20 C.F.R. § 404.1520a(b)(1). Then, the ALJ must rate the degree of Plaintiff's functional limitation resulting from the impairment in four areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. <u>See</u> 20 C.F.R. § 404.1520a(c)(3).

These areas are rated on a scale of "none, mild, moderate, marked, and extreme." 20 C.F.R. §§ 404.1520a(c)(4); 416 .920a(c)(4). A mental impairment is generally found not severe if the degree of limitation in the first three areas is mild or better and there are no episodes of decompensation. § 404.1520a(d)(1). The ALJ must document "a specific finding as to the degree of limitation in each of the functional areas." 20 C.F.R. § 404.1520a(e)(2). If the mental impairment is found to be severe, at the third step of the review, the ALJ must consider whether the claimant's mental impairments meet or medically equal one of the listed impairments. If the impairments do meet or medically equal one of the impairments set forth in the Listings, the claimant will be found to be disabled. If not, the ALJ is then required to assess the claimant's residual mental functional capacity. § 404.1520a(d)(3).

In the present case, the ALJ concluded that Plaintiff's history of pseudoseizures was a severe impairment because it imposed more than a slight limitation of function with regard to Plaintiff's ability to perform basic work activities. (T at 16). It is not clear whether the ALJ considered the history of pseudoseizures a psychological impairment and/or whether the ALJ applied the special technique in reaching the conclusion that the impairment was severe. In any event, any arguable error at this stage of the analysis was harmless because the ALJ continued with the sequential analysis and assessed Plaintiff's residual functional capacity. (As outlined above, the ALJ did not properly weigh the treating

psychologist's opinion when assessing Plaintiff's RFC. That error did cause harm and requires a remand).

Plaintiff contends that he suffers from anxiety and depression and that the ALJ also erred by finding that these impairments were non-severe. Applying the special technique with regard to depression and anxiety, the ALJ concluded that these conditions caused no restrictions with regard to Plaintiff's ability to perform his activities of daily living; no difficulties with social functioning; and no difficulties with respect to concentration, persistence or pace. (T at 17). This Court finds that this issue should also be reconsidered on remand. It is not clear whether Plaintiff's symptoms of depression and anxiety are connected or causally related to his pseudoseizures or whether they are separate impairments, imposing some degree of limitation independent of (or in combination with) the pseudoseizures. Certainly, the opinions provided by Dr. Kimball (including, in particular, the GAF scores and functional assessment discussed above) contradict generally the ALJ's finding that Plaintiff had no difficulties with regard to activities of daily living, social functioning; and concentration, persistence or pace.[8] The ALJ should revisit this issue and should ask Dr. Kimball to provide his opinion on the link, if any, between Plaintiff's pseudoseizures and his symptoms of depression and anxiety.

### d. Credibility

Courts in the Second Circuit have determined a claimant's subjective complaints are an important element in disability claims, and they must be thoroughly considered. See Ber

---

[8]As noted above, Dr. Kimball found marked restrictions with regard to carrying out complex instructions; moderate limitations as to interacting appropriately with the public and supervisors; and moderate limitations as to Plaintiff's ability to respond appropriately to usual work situations and to changes in a routine work setting. (T at 374-75).

v. Celebrezze, 333 F.2d 923 (2d Cir.1994). Further, if a claimant's testimony of pain and limitations is rejected or discounted, the ALJ must be explicit in the reasons for rejecting the testimony. See Brandon v. Bowen, 666 F.Supp. 604, 609 (S.D.N.Y.1997).

However, subjective symptomatology by itself cannot be the basis for a finding of disability. A claimant must present medical evidence or findings that the existence of an underlying condition could reasonably be expected to produce the symptomatology alleged. See 42 U.S.C. §§ 423(d)(5)(A), 1382c (a)(3)(A); 20 C.F.R. §§ 404.1529(b), 416.929; SSR 96-7p; Gernavage v. Shalala, 882 F.Supp. 1413, 1419 (S.D.N.Y.1995).

"An administrative law judge may properly reject claims of severe, disabling pain after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence." Lewis v. Apfel, 62 F.Supp.2d 648, 651 (N.D.N.Y.1999) (internal citations omitted).

To this end, the ALJ must follow a two-step process to evaluate the plaintiff's contention of pain, set forth in SSR 96-7p:

> First, the adjudicator must consider whether there is an underlying medically determinable physical or medical impairment (s) ... that could reasonably be expected to produce the individual's pain or other symptoms ....
>
> Second, ... the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities ....

According to 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii) and 416.929(c)(3)(i)-(vii), if the plaintiff's pain contentions are not supported by objective medical evidence, the ALJ must consider the following factors in order to make a determination regarding the plaintiff's

credibility:

1.      [Plaintiff's] daily activities;
2.      The location, duration, frequency and intensity of [Plaintiff's] pain or other symptoms;
3.      Precipitating and aggravating factors;
4.      The type, dosage, effectiveness, and side effects of any medication [Plaintiff] take[s] or ha[s] taken to alleviate ... pain or other symptoms;
5.      Treatment, other than medication [Plaintiff] receive[s] or ha[s] received for relief of ... pain or other symptoms;
6.      Any measure [Plaintiff] use[s] or ha[s] used to relieve ... pain or other symptoms;
7.      Other factors concerning [Plaintiff's] functional limitations and restrictions due to pain or other symptoms.

If the ALJ finds that the plaintiff's pain contentions are not credible, he or she must state his reasons "explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." Young v. Astrue, No. 7:05-CV-1027, 2008 WL 4518992, at *11 (N.D.N.Y. Sept. 30, 2008) (quoting Brandon v. Bowen, 666 F. Supp 604, 608 (S.D.N.Y.1987)).

In the present case, Plaintiff offered the following testimony: He suffers pseudoseizures "pretty frequently" and they seem to be triggered by small amounts of stress or strenuous activity. (T at 28). He experiences episodes of narcolepsy and symptoms of depression and anxiety. (T at 29, 45-46). Plaintiff lost several restaurant jobs because of his pseudoseizure disorder. (T at 29-32). He was honorably discharged from the United States Marines because of his disorder. (T at 36-37). He has difficulty relating with people and problems maintaining concentration. (T at 46-48). Plaintiff also offered the testimony of his girlfriend, Amber Ecker, who described Plaintiff's seizure episodes. (T at 57-58).

The ALJ determined that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms were not fully credible. (T at 20). Plaintiff argues that the ALJ weighed the "website" evidence too strongly and did not adequately consider Plaintiff's attempts to qualify/modify the statements posted on his websites. As outlined above, this Court finds no reversible error with regard to the ALJ's assessment of the website evidence and Plaintiff's attempts to explain.

However, the ALJ's credibility determination may have been unduly influenced by the website evidence and may have affected his overall view of Plaintiff's claim and is nevertheless undermined by his failure to properly weigh Dr. Kimball's opinion and therefore cannot be sustained. Dr. Kimball's assessment of Plaintiff's functioning and ability to perform work consistently and reliably (T at 375) was supportive of Plaintiff's subjective testimony. The ALJ's error in discounting Dr. Kimball's opinion thus necessarily impacted his assessment of Plaintiff's credibility.

The ALJ also found that Plaintiff's "poor earnings history" undermined his credibility. (T at 21). It is not clear whether the ALJ considered that Plaintiff's extensive history of repeated, but very brief, work attempts (T at 124, 145-46) is indicative of a desire to work thwarted by an inability to maintain employment; as opposed to a lack of initiative. Indeed, Plaintiff's work record (which shows numerous jobs of very brief duration) (T at 145-46) is at least arguably consistent with his testimony that he is discharged from employment after a short period of time because of his condition. This should be considered on remand and the question of Plaintiff's credibility should be revisited after further development of the

20

record with regard to Dr. Kimball.

### e. Past Relevant Work

"[I]n the fourth stage of the SSI inquiry, the claimant has the burden to show an inability to return to her previous specific job and an inability to perform her past relevant work generally." Jasinski v. Barnhart, 341 F.3d 182, 185 (2d Cir. 2003) (citing SSR 82-62). A claimant is not disabled if she can perform her past relevant work, either as she actually performed it, or as it is generally performed in the national economy. See SSR 82-61; Jock v. Harris, 651 F.2d 133, 135 (2d Cir.1981)(noting that "the claimant has the burden to show an inability to return to her previous specific job and an inability to perform her past relevant work generally").

"Determination of the claimant's ability to perform past relevant work requires a careful appraisal of (1) the individual's statements as to which past work requirements can no longer be met and the reason(s) for his or her inability to meet those requirements; (2) medical evidence establishing how the impairment limits ability to meet the physical and mental requirements of the work; and (3) in some cases, supplementary or corroborative information from other sources such as employers, the Dictionary of Occupational Titles, etc., on the requirements of the work as generally performed in the economy." Speruggia v. Astrue, No. 05-CV-3532, 2008 WL 818004, at *12-*13 (E.D.N.Y. Mar. 26, 2008).

The ALJ concluded that Plaintiff retained the residual functional capacity to perform his past relevant work as a consumer relations call center representative. (T at 21). For the reasons outlined above, the ALJ's RFC determination was flawed. The ALJ did not properly assess Dr. Kimball's opinion or develop the record. As such, the ALJ's step four

finding with regard to past relevant work will need to be revisited on remand after further development of the record.

### 3. Remand

"Sentence four of Section 405 (g) provides district courts with the authority to affirm, reverse, or modify a decision of the Commissioner 'with or without remanding the case for a rehearing.'" Butts v. Barnhart, 388 F.3d 377, 385 (2d Cir. 2002) (quoting 42 U.S.C. § 405 (g)). Remand is "appropriate where, due to inconsistencies in the medical evidence and/or significant gaps in the record, further findings would . . . plainly help to assure the proper disposition of [a] claim." Kirkland v. Astrue, No. 06 CV 4861, 2008 WL 267429, at *8 (E.D.N.Y. Jan. 29, 2008). Given the deficiencies in the record as outlined above, it is recommended that the case be remanded for further proceedings consistent with this Report and Recommendation.

## IV. CONCLUSION

For the foregoing reasons, it is respectfully recommended that Defendant's Motion for Judgment on the Pleadings be DENIED, that Plaintiff's Motion for Judgment on the Pleadings be GRANTED, and that this case be remanded for further administrative proceedings.

Respectfully submitted,

Dated: October 24, 2012

Syracuse, New York

Victor E. Bianchini
United States Magistrate Judge

## V. ORDERS

Pursuant to 28 USC §636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as NDNY Local Rule 72.1(c).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material *which could have been, but were not*, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

SO ORDERED.

Victor E. Bianchini
United States Magistrate Judge

Dated:   October 24, 2012

       Syracuse, New York